# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2951

_____

United States of America,

    Plaintiff - Appellee,

  v.

Michael Shane Durham,

    Defendant - Appellant.

*
*
*
* Appeal from the United States
* District Court for the Western
* District of Arkansas.
*
*
*

_____

Submitted: April 13, 2010
Filed: August 26, 2010

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

  Michael Durham appeals the sentence of 151 months' imprisonment he received from the district court after pleading guilty to knowingly receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). Durham contends the district court erred by applying a two-level enhancement for distributing child pornography pursuant to United States Sentencing Guidelines Manual (U.S.S.G.) § 2G2.2(b)(3)(F). He also challenges certain conditions of supervised release imposed by the district court. We affirm in part and reverse in part.

# I

Michael Durham was charged in an eight-count indictment with, among other counts, knowingly receiving child pornography transported through interstate commerce by a computer in violation of 18 U.S.C. § 2252(a)(2). Pursuant to a plea agreement, Durham pleaded guilty to Count I and the remaining seven counts were dismissed at sentencing.

The Presentence Investigation Report ("PSR") placed Durham in Criminal History Category I and recommended a base offense level of 22. The PSR also recommended several enhancements, including a two-level enhancement for distributing child pornography pursuant to U.S.S.G. § 2G2.2(b)(3)(F), to which Durham objected. The enhancements resulted in a total offense level of 34, after applying a three-level reduction for acceptance of responsibility.

At the sentencing hearing, the government called Detective Al Barrios, a forensic examiner with the Springdale Police Department, to testify regarding the contents of Durham's seized computer. Barrios described how Detective Mike Parks with the Fayetteville Police Department initially found Durham's IP address offering to participate in the distribution of child pornography files on Limewire, a peer-to-peer file-sharing program. In his investigation, Parks did not actually download any of the files associated with Durham's IP address, but he believed the file names were consistent with child pornography.

The officers determined the computer associated with the IP address in Parks's investigation was located at Durham's residence in Springdale, and they subsequently obtained a warrant to search the computer. After the officers executed the search warrant at Durham's residence, he admitted to using Limewire to download music and child pornography files. Barrios testified Durham's default Limewire settings had been changed to save and share files from different folders than would have

automatically been set by the program. Barrios believed this indicated an action by Durham to change these settings, despite the multiple users on Durham's family computer.

Barrios also testified that files downloaded by Durham were available for others to download through Limewire, as demonstrated by logs showing the available files obtained by Parks in his investigation. However, upon executing the search warrant, the officers discovered no child pornography files contained in Durham's shared folder. Barrios indicated the files would have been in the shared folder at the time Parks conducted his investigation because Parks was able to view the file names available for download before they were removed. On cross-examination, Barrios conceded the only proof available demonstrated child pornography files were *made available* for upload, but there was no evidence of any files *actually being uploaded* from Durham's computer.

Following Barrios's testimony, Durham presented testimony from his brother, Casey Durham. Casey indicated he installed Limewire on Durham's computer with Durham's daughter and showed her how to use the program to download music. Casey also testified Durham was not present when Limewire was installed, nor was he knowledgeable about the program. According to Casey, he set up the program according to the default settings, which automatically enables file-sharing with other Limewire users.

After hearing the parties' proffered testimony and arguments, the district court concluded there was no evidence of possession with intent to distribute, but it held the distribution enhancement nonetheless applied due to Durham's use of Limewire. Based on the testimony, the court determined Durham was "very knowledgeable" about Limewire's downloading capabilities, which, in turn, lead the court to conclude he was also knowledgeable about Limewire's uploading capabilities.

The court acknowledged there was no statement from Durham demonstrating he knew others could access his materials; however, it found the lack of this direct evidence was not dispositive. Under the preponderance of the evidence standard, the court concluded the two-level enhancement for distribution applied. Durham's counsel objected and instead argued he should have received a two-level reduction for not intending to traffic in, or distribute, child pornography under U.S.S.G. § 2G2.2(b)(1). In response, the court held that provision did not apply because Durham utilized Limewire, rather than receiving child pornography through another program that did not feature automatic file-sharing.

Based on the court's ruling, the applicable Guidelines range was 151-188 months. The court ultimately imposed a sentence of 151 months' imprisonment and 10 years of supervised release. It then imposed seven special conditions of supervised release, including a condition allowing the probation office to track Durham's whereabouts through any means the office deems acceptable, a condition placing limitations on Durham's internet access, and a condition limiting Durham's contact with minors. Durham's counsel only objected to the tracking condition. He appeals the court's imposition of these conditions, as well as its application of the distribution enhancement.

II

"We review the district court's sentencing decision for an abuse of discretion, and our review is limited to determining whether the sentence is unreasonable." United States v. Blankenship, 552 F.3d 703, 704 (8th Cir. 2009). We first ensure the district court committed no significant procedural error, such as improperly calculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. United States v. Gonzalez, 573 F.3d 600, 605 (8th Cir. 2009). We review the district court's application of the

Guidelines de novo, and its factual findings for clear error. <u>Blankenship</u>, 552 F.3d at 704.

### A. The Distribution Enhancement

Durham first contends the district court committed procedural error by applying a two-level enhancement for distribution of child pornography pursuant to U.S.S.G. § 2G2.2(b)(3)(F), and alternatively it should have imposed a two-level reduction under § 2G2.2(b)(1). Unlike prior cases considered by this court, Durham asserts he provided no admission evincing his knowledge that he was distributing child pornography over the file-sharing network. In fact, he argues, there was no evidence demonstrating any actual uploads from his computer to warrant the distribution enhancement; the only evidence showed a listing of his downloaded files was available at one point for others to access via Limewire, notwithstanding the fact that no child pornography was discovered in his shared folder upon execution of the search warrant. The use of Limewire in itself, which automatically enables file-sharing upon installation, does not provide a sufficient basis for the distribution enhancement, according to Durham. This is particularly true in this case, he claims, where the district court explicitly found no evidence of his intent to distribute, advertise, or transport child pornography.

Under Application note 1 to § 2G2.2, "distribution" is defined as follows:

> "Distribution" means any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2(b)(3)(F) cmt. n. 1.

Before discussing whether the district court properly applied the distribution enhancement in the instant matter, we begin with a review of our pertinent cases examining the application of such enhancements in peer-to-peer network cases. In United States v. Griffin, 482 F.3d 1008, 1011 (8th Cir. 2007), this court first considered whether the expectation of receipt of child pornography through a file-sharing program constituted a "thing of value, but not for pecuniary gain" pursuant to a separate five-level distribution enhancement provided under U.S.S.G. § 2G2.2(b)(2)(B). Griffin held such bartering of child pornography over a file-sharing network was sufficient to meet the "thing of value" enhancement because "these networks exist–as the name 'file-sharing' suggests–for users to share, swap, barter, or trade files between one another." Id. at 1012-13. Accordingly, the defendant in Griffin, who admitted he downloaded child pornography and knew other users of the file-sharing program could download files from him, was appropriately sentenced based on the five-level "thing of value" enhancement. Id. at 1013.

After Griffin, other circuits that had not yet addressed the issue similarly concluded the use of a file-sharing program to download child pornography was a sufficient basis to impose a distribution enhancement under the Guidelines. United States v. Layton, 564 F.3d 330, 335 (4th Cir. 2009) ("We concur with the Seventh, Eighth, and Eleventh Circuits and hold that use of a peer-to-peer file-sharing program constitutes 'distribution' for the purposes of U.S.S.G. § 2G2.2(b)(3)(F)."). However, the Tenth Circuit expressly disagreed with Griffin in United States v. Geiner, 498 F.3d 1104, 1111 (10th Cir. 2007).

In Geiner, the court interpreted Griffin to automatically apply a distribution enhancement whenever a defendant obtains child pornography through a file-sharing program. Id. This broad interpretation of the distribution enhancement based merely on a defendant's installation of a file-sharing network ignores the language of § 2G2.2(b)(3)(B), according to Geiner, which applies an enhancement only when the defendant distributes child pornography *for* the receipt, or expectation of receipt, of

other files on the network.  Id.  Geiner noted the inquiry was "a question of fact properly resolved on a case-by-case basis by the sentencing court."  Id.  Despite its disagreement with Griffin, Geiner upheld the application of the enhancement because the defendant nevertheless expected to receive a "thing of value," in the form of faster downloading speeds in return for his sharing of files over the network.  Id.

In United States v. Stults, 575 F.3d 834, 848 (8th Cir. 2009), this court noted Geiner incorrectly interpreted Griffin to automatically apply a distribution enhancement whenever a defendant utilizes a file-sharing program to download child pornography.  Stults recognized "[o]ur holding in Griffin . . . was inseparable from our conclusion that 'the government met its burden of establishing that the defendant expected to receive a 'thing of value' . . . by introducing the defendant's admissions." Id. at 848-49.  The defendant in Griffin, Stults acknowledged, admitted he downloaded child pornography and he knew others could download files from him. Id. at 849.  As a result, Stults concluded, "whether a defendant qualifies for the five-level enhancement must be decided on a case-by-case basis, with the government bearing the burden of pro[of]."  Id.  While there was no direct admission from the defendant in Stults, the court nevertheless upheld the application of the enhancement because circumstantial evidence demonstrated the defendant was technically sophisticated in computer use and understood how Limewire worked, and thus he knew he was distributing child pornography through his use of the program.  Id.

In United States v. Ultsch, 578 F.3d 827, 829-30 (8th Cir. 2009), this court again recognized "Griffin did not call for automatic application of the enhancement 'based merely on a defendant's installation of file-sharing software,' as the Tenth Circuit may have suggested."  Instead, Ultsch reaffirmed that application of a distribution enhancement must be decided on a case-by-case basis, with the government bearing the burden of proof.  Id. at 830.  The district court properly applied the five-level distribution enhancement, according to the court in Ultsch, because the defendant was a "relatively sophisticated user" of Limewire who had

downloaded a "large quantity of material" and used terms indicative of his knowledge of the sharing capabilities. Id.

More recently, in United States v. Estey, 595 F.3d 836, 843 (8th Cir. 2010), this court relied on Griffin to impose a two-level distribution enhancement under U.S.S.G. § 2G2.2(b)(3)(F), rather than the five-level "thing of value" enhancement provided under § 2G2.2(b)(3)(B). Estey noted the defendant's distribution of child pornography via a file-sharing program "could have amounted to distribution under either of these subparts of U.S.S.G. § 2G2.2(b)(3)," and thus the defendant's attempt to distinguish his case from Griffin on that basis was unavailing. Id. The court was unimpressed with the defendant's suggestion that he inadvertently shared images with other file-sharing users, because "like the defendants in both Griffin and [United States v. Sewell, 457 F.3d 841 (8th Cir. 2006)], Estey knowingly placed an internet peer-to-peer file-sharing program on his computer, knew how the program operated, and shared images with other network users." Id. at 844. The court noted other users were able to retrieve the defendant's images "because Estey had child pornography in his file-sharing folder when the images were discovered by law enforcement authorities." Id. In addition, similar to the defendant in Geiner, the defendant admitted he placed images in his shared folder to enable him to download images faster. Id.

In another recent case, United States v. Dodd, 598 F.3d 449 (8th Cir. 2010), this court significantly altered the analysis applied to child pornography distribution enhancements in file-sharing cases. The defendant in Dodd asserted he lacked any intent to distribute child pornography after he downloaded the files to his computer, despite the fact that an investigator accessed and downloaded child pornography stored on his computer. Id. at 451. Neither side presented any evidence on the distribution issue at sentencing and the district court ultimately applied the two-level enhancement under § 2G2.2(b)(3)(F). Id.

On appeal, Dodd affirmed the district court's two-level enhancement under Griffin. Id. First, Dodd acknowledged the matter was a "fact-intensive inquiry." Id. According to the court, while one could hypothesize that a defendant had no knowledge of his distribution of child pornography files via the file-sharing program, "the purpose of a file sharing program is to share, in other words, to distribute." Id. at 452. As a result, Dodd imposed a new standard whereby the file-sharing defendant must show "concrete evidence of ignorance–evidence that is needed because ignorance is entirely counterintuitive." Id. Without such evidence, Dodd concluded, "a fact-finder may reasonably infer that the defendant knowingly employed a file sharing program for its intended purpose." Id. Despite the new requirement placed upon the defendant, the court reaffirmed the government retains the burden to prove the enhancement on a case-by-case basis. Id. at 452 n. 2.

Dodd noted its holding was consistent with the broad definition of "distribution" encompassed within § 2G2.2. Id. at 452. The court recognized the Sentencing Commission's recent clarification that "distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant." Id. According to Dodd, "[t]hese definitions confirm that distribution as defined in § 2G2.2 includes operating a file sharing program that enables other participating users to access and download files placed in a shared folder, and then placing child pornography files in that folder." Id. at 452-53.

Finally, in this court's most recent case to date on the issue, United States v. Bastian, 603 F.3d 460 (8th Cir. 2010), the court again rejected a defendant's attempt to avoid the five-level distribution enhancement. Bastian noted the government could discharge its burden of proving the enhancement through direct evidence, such as the defendant's admission, or by indirect evidence, "such as the defendant's technical sophistication in computers, inferring that he knew that by using a file-sharing network, he could download files from others who could also access his files." Id. at

466. In <u>Bastian</u>, the defendant used Limewire to download child pornography, but he never admitted he knew he was sharing files with others, nor was there evidence he was a sophisticated user of Limewire, according to the defendant. <u>Id.</u> However, the court never analyzed the application of the enhancement on these facts because it concluded any error was harmless due to the fact that the defendant's offense level would not have been affected even absent the enhancement.[1] <u>Id.</u>

Turning to the facts of this case, Durham asserts there are several distinctions from the cases discussed above. First, unlike <u>Griffin</u>, the government concedes it has no direct evidence of Durham's knowledge of distribution by way of any admission on Durham's part. Durham maintains he had no knowledge that other Limewire users could possibly obtain files from his computer. Likewise, he made no admissions like the defendants in <u>Geiner</u> and <u>Estey</u> to placing images in his shared folder in order to enable faster downloading capability over the network. Despite the lack of any admissions on Durham's part, our case law is clear that the government may meet its burden through indirect evidence. <u>Id.</u>

---

[1]Although the court never reached the issue, Judge Colloton wrote a separate concurrence discussing the government's position that the five-level enhancement applies if a defendant installs a file-sharing program on his computer, knows the program allows distribution of files, and distributes and receives images through use of the program. <u>Id.</u> at 467. Judge Colloton noted this position may find some support in <u>Griffin</u>, but the recent attempts to "clarify" <u>Griffin</u> in <u>Stults</u> and <u>Ultsch</u> "probably have not sufficiently narrowed some of <u>Griffin</u>'s language and reasoning." <u>Id.</u> Judge Colloton concluded the simple use of a file-sharing program, with knowledge of its operation, was a "tenuous basis on which to urge the application of § 2G2.2(b)(3)" because it eliminates the need for a "transaction." <u>Id.</u> at 468. In other words, "[i]f a file-sharing program allows the user to download child pornography from other computers, *whether or not* the user makes his own images available to other parties, then the user's distribution is gratuitous. It is not *for* the receipt of a thing of value, because it is unnecessary to the receipt of a thing of value." <u>Id.</u> at 467 (emphasis in original).

Durham also argues the instant matter is distinguishable from Dodd and Griffin because there was no evidence of any actual uploads, i.e. distribution, of child pornography from Durham's computer. Barrios confirmed in his testimony that no evidence existed to show any Limewire users had ever actually obtained child pornography from Durham's computer; the evidence only showed at one point the files with names suggestive of child pornography were available for download. Further, unlike Estey, upon execution of the search warrant, the officers discovered no child pornography files in Durham's shared folder.

Although we agree with Durham that these facts distinguish this case, neither of these facts alone is determinative because our case law inquires whether the defendant's "use of the peer-to-peer file-sharing network made the child pornography files in his shared folder *available* to be searched and downloaded by other [file-sharing] users." Estey, 595 F.3d at 843 (emphasis added). See also Griffin, 482 F.3d at 1010-11 (noting the defendant's shared folder had been deleted from the computer upon execution of the search warrant). Parks's investigation uncovered files with names suggestive of child pornography available on Durham's computer through Limewire, and thus this requirement was satisfied.

While the lack of direct evidence or actual uploads does not make this case novel, other distinguishing facts present a closer question. First, unlike the typical situation exemplified by Estey, evidence presented at sentencing shows Durham was not responsible for the installation of Limewire on his computer. Estey, 595 F.3d at 844 ("Estey *knowingly placed an internet peer-to-peer file-sharing program on his computer*, knew how the program operated, and shared images with other network users.") (emphasis added). Barrios, the government's only witness, conceded he did not know who installed Limewire, and the defense subsequently presented testimony from Durham's brother, Casey, regarding the latter's installation and set-up of the program. Casey indicated he installed Limewire with Durham's daughter in order for

her to download music. According to Casey, he configured Limewire according to the default settings, which automatically enabled file-sharing with other users.

Second, and more importantly, there is little evidence to show Durham knew how to operate the program. Casey testified he was "absolutely" more knowledgeable than Durham about general computer knowledge, and even Casey indicated he "[knew] a little bit, but . . . not everything, for sure." Casey further testified he told Durham he installed Limewire on the family computer, but Durham "wasn't real sure how to use it." Casey speculated Durham's daughter might have showed him how to use the program, but "[p]robably not in detail like I showed [his daughter]."

The foregoing facts illustrate a substantial distinction from our prior cases. The primary means of indirect evidence provided in our prior cases has been the defendant's sophistication with the file-sharing program. Such sophistication provides an inference that the defendant knew "by using a file-sharing network, he could download files from others who could also access his files." Bastian, 603 F.3d at 466. Accordingly, this court has upheld the application of distribution enhancements based on a defendant's file-sharing sophistication on numerous occasions. See Estey, 595 F.3d at 844 ("[L]ike the defendants in both Griffin and Sewell, Estey . . . knew how the [file-sharing] program operated"); Ultsch, 578 F.3d at 830 ("The defendant was a relatively sophisticated user of [Limewire]"); Stults, 575 F.3d at 849 ("The district court reasonably deemed Stults, who is technically sophisticated in computer use, with knowing that he was distributing child pornography through his use of LimeWire.").

Here, the district court's analysis evoked the familiar sophistication basis for its application of the distribution enhancement, as it concluded Durham was "very knowledgeable" about Limewire's capabilities. We are troubled by this conclusion,

however, because it appears to be contradictory to the evidence in the record.[2] The only testimony directed at Durham's knowledge of file-sharing programs was provided by his brother Casey, who explicitly stated Durham "wasn't real sure how to use [the file-sharing program]."[3] While there is direct evidence of Durham's knowledge of *downloading* files via Limewire, there is no such evidence of his knowledge of *uploading*, i.e. distributing files, over the program, which is a critical distinction in this case.

Instead, the district court appeared to justify its conclusion on two premises. First, the court apparently accepted the government's argument that a shortcut to Durham's shared folder on his Windows desktop demonstrated his knowledge of file-sharing programs. The argument was based on testimony elicited from Barrios, who stated a shortcut on Durham's desktop was created after the installation of Limewire to allow Durham to directly access his shared folder containing files downloaded from Limewire.

---

[2]The dissent states there is "ample evidence" to support a finding that Durham knew how Limewire worked. In addition to Barrios's testimony, which is discussed below, the dissent points to facts in the PSR establishing that (1) police identified 59 child pornography files on a computer traced back to Durham's home, (2) police found nearly 50 videos and more than 400 images containing child pornography on Durham's computer, (3) Durham admitted to searching for illicit videos, and (4) all of the child pornography was stored under Durham's password-protected profile. Each of these facts merely establish evidence of Durham's *downloading* and receipt of child pornography, a fact he does not dispute. The evidence as to Durham's knowledge of distribution, as discussed in depth below, demonstrates otherwise.

[3]We recognize the district court was entitled to discredit Casey's testimony as it saw fit. See United States v. Johnson, 601 F.3d 869, 872 (8th Cir. 2010) ("A district court's assessment of witness credibility is virtually unreviewable on appeal."). However, there is no indication whatsoever that the district court deemed Casey's testimony unreliable or not credible.

-13-

We note Barrios's testimony was, at best, equivocal as to whether he examined the settings for the other users on the computer, and thus he did not know if the settings on their profiles matched the settings on Durham's profile. More importantly, this argument, like the government's focus on Durham's search terms for child pornography, is largely a red herring.[4] Rather than being indicia of distribution, as the government urges, the fact that Durham might have created a shortcut to his shared folder more plausibly demonstrates indicia of his receipt of child pornography–a fact not in dispute.[5] In the same way a file-sharing program exists for the purpose of sharing files, see Dodd, 598 at 452, a shortcut exists, as its name suggests, to allow a user to quickly access files in a specified folder in fewer "mouse-clicks" or keystrokes. The fact Durham may have desired quicker access to his *downloaded* materials via a shortcut in Windows does not establish his knowledge that those materials were simultaneously capable of being *uploaded* to other users on a software program, as the shortcut maintains no functionality related to uploading files on a file-sharing program. Perhaps such a shortcut may indicate evidence of distribution if the defendant directly loaded child pornography into the shared folder on his computer, and then proceeded to upload those files over a file-sharing network; but there is no suggestion Durham engaged in any such activity because his alleged distribution was limited to files he downloaded through Limewire. As a result, we reject the government's argument that a shortcut provides evidence of distribution.[6]

---

[4]At oral argument, the government suggested Durham was knowledgeable about Limewire's capabilities because he searched for terms like "kid sex" and "teen sex." These search terms, while indicative of Durham's desire to download child pornography, fail to establish any evidence of distribution.

[5]The government also places much emphasis on the fact Durham's Windows profile was password-protected. As a practical matter, any effect of the password-protection is negated by the record because Casey clearly testified both he and Durham's daughter, among others, knew Durham's password.

[6]The dissent also points to Barrios's testimony that it was "barely possible" that files could be shared on Limewire without the user's knowledge after a period of time.

The second, and more substantial basis relied upon by the district court was its assessment of the very nature of Limewire itself. The district court began its analysis by stating the following:

> I haven't heard any evidence that would persuade me that the defendant possessed with intent to distribute or advertise or transport, but I think that there is evidence to indicate that this material was posted because it was placed on a Limewire program, the [single], and perhaps only purpose of which is to do that very thing, to post it to permit it to be shared by any and all who might choose to access that site.

The court proceeded to equate Durham's knowledge of downloading files with his knowledge of uploading files over Limewire:

> Now, based on that and the testimony that I have heard here, it would seem to me that the defendant was very knowledgeable that the Limewire program would permit him to access it and download child porn as and when he chose, without getting any permission from anybody, but that that feature would permit him to do that. [It strains credulity] to reason that he would not, by that knowledge, understand that it's a two-way street, that if he could do that, it's quite likely that others could as well.

As discussed in depth above, we have continued to reaffirm that the government retains the burden of proving distribution enhancements. Dodd, 598 F.3d at 452 n.2. Moreover, we have explicitly rejected any suggestion we automatically apply a

---

After further inquiry by the district court, however, Barrios confirmed multiple times that "[i]t's possible" for someone to install Limewire only to receive materials, without knowing others could also receive materials from them, which occurs under the default setting. The record demonstrates Casey installed Limewire precisely for that purpose–for Durham's daughter to download music. While Casey understood others could obtain files from him according to the default settings, he never told Durham of this fact.

distribution enhancement based merely on a defendant's use of a file-sharing program. Ultsch, 578 F.3d at 830. Rather, the enhancement must be decided on a case-by-case basis depending on the facts at hand. Id.

The district court's foregoing comments demonstrate it violated this well-established principle of our case law by automatically applying the distribution enhancement based on Durham's use of a file-sharing program. The court explicitly concluded Durham had no intent to distribute, but it determined the enhancement was proper solely because he utilized a file-sharing program, which exists for the purpose of sharing files between users. While this court has agreed the purpose of these programs is to share files among its users, see Dodd, 598 F.3d at 452, we have consistently prohibited the automatic application of distribution enhancements based solely on a defendant's use of a file-sharing program.

Perhaps no place in the record is the district court's automatic application of the distribution enhancement more telling than after Durham objected to its final Guidelines calculation. After Durham moved for a two-level reduction pursuant to § 2G2.2(b)(1), the court denied the motion by stating the following:

> Based upon my ruling and what I've heard, his conduct was not limited to [receipt] because it was posted on the Limewire. He could have received it, it seems to me, or solicited it without utilizing a program which featured automatic file-sharing. So I don't think he qualifies for that provision. So I'll deny your motion for that reason.

These comments establish the court's automatic application of the enhancement because it explicitly concluded Durham could have avoided the enhancement had he not used a file-sharing program. Rather than deciding the merits of the enhancement

-16-

on an individualized basis under the facts, the court automatically imposed the enhancement because Durham used a file-sharing program, contrary to our precedent.[7]

The district court's automatic application of the enhancement is further demonstrated by this court's recent pronouncement in Dodd that unless a defendant presents "concrete evidence of ignorance," the fact-finder may reasonably infer the defendant utilized a file-sharing program to distribute files.[8] 598 F.3d at 452. While we have not yet had occasion to consider what constitutes "concrete evidence of ignorance," we conclude the evidence presented by Durham meets this standard.[9]

First, this matter is distinguishable from Dodd because, in that case, neither the government nor the defendant presented any evidence on the distribution enhancement at sentencing. Id. at 451. By contrast, the government in this case presented testimony from Barrios on the investigation. Durham objected to the enhancement and presented testimony of his lack of knowledge from his brother, Casey.

---

[7]In United States v. Dorvee, 604 F.3d 84, 96 (2d Cir. 2010), the Second Circuit provided an interesting discussion on the standard application of several § 2G2.2 enhancements in nearly all cases. While Dorvee did not specifically discuss distribution enhancements, it noted the typical enhancements, including several that applied to Durham here, result in a concentration of varying offenders at or near the statutory maximum, which diminishes the importance of the nature and circumstances of each offense and the history and characteristics of the defendant. Id. at 96-97.

[8]Dodd was filed after the parties submitted their briefs, but prior to oral argument. The government submitted a letter pursuant to Fed. R. App. P. 28(j) urging us to consider Dodd, and the parties argued the import of the case at oral argument.

[9]At oral argument, Durham's counsel suggested Dodd impermissibly shifted the burden of proving distribution enhancements from the government to the defendant. We need not address this issue here because, in any event, we conclude Durham presented "concrete evidence" of his ignorance to satisfy the Dodd standard.

As discussed above, Casey indicated he installed Limewire on Durham's computer, he did not instruct Durham on how to use the program, and Durham was not knowledgeable regarding the program's capabilities. In addition, the government conceded at oral argument Barrios was not a strong witness, and it should have called Detective Parks to testify regarding his knowledge of the investigation. Under these circumstances, we conclude Durham presented "concrete evidence" of his ignorance.[10] As a result, even under the stricter Dodd standard, the district court's application of the distribution enhancement was improper.[11]

In light of our foregoing discussion, we conclude the district court improperly calculated Durham's Guidelines range by applying a two-level distribution enhancement under § 2G2.2(b)(3)(F). We reverse the district court's application of the enhancement and we remand for resentencing, at which time the district court may consider whether Durham is entitled to a further two-level reduction under § 2G2.2(b)(1). Stults, 575 F.3d at 847 ("A non-harmless error in calculating the guidelines range requires a remand for resentencing.").

---

[10]The dissent states it is "skeptical that the opinion of a defendant's sibling" is the kind of "concrete evidence" Dodd had in mind. As stated above, there is absolutely no indication the district court deemed Casey's testimony unreliable or not credible. Absent such a finding, it is not within our province on appeal to make such determinations. See United States v. Johnson, 601 F.3d 869, 872 (8th Cir. 2010) ("A district court's assessment of witness credibility is virtually unreviewable on appeal.") (internal quotation marks and citation omitted). On the other hand, the dissent bases much of the support for its conclusion on the testimony of Barrios, a witness described at oral argument by the *government* as "admittedly . . . not a strong witness."

[11]We again note Dodd's "concrete evidence" standard did not supersede the government's burden to prove the enhancement on a case-by-case basis. Id. at 452 n.2. The government failed to meet its burden in this case, and the district court improperly applied the enhancement on an automatic basis due to Durham's use of a file-sharing program.

B. Special Conditions of Supervised Release

Durham next contends the district court abused its discretion by imposing certain special conditions of supervised release. The first challenged condition allows the probation office to track his whereabouts by any means it deems necessary. The second challenged condition bans Durham from accessing child pornography during the time he has internet access. Finally, the last challenged condition prohibits Durham from accessing the internet without prior approval from the probation office.[12]

"We review the district court's imposition of the terms and conditions of supervised release for an abuse of discretion." United States v. Jorge-Salgado, 520 F.3d 840, 842 (8th Cir. 2008) (citation omitted). "We recognize that the district court is afforded wide discretion in imposing supervised release conditions." Id. But this discretion is limited by the requirement that the conditions "be reasonably related to the § 3553(a) factors, involve no greater deprivation of liberty than is reasonably necessary, and are consistent with any pertinent policy statements issued by the United States Sentencing Commission." Id.; United States v. Bender, 566 F.3d 748, 751 (8th Cir. 2009).

1. Tracking Condition

Special Condition 2 requires Durham to "submit to any means utilized by the probation office to track his whereabouts or location at any time during supervised release." After Durham objected to the condition at sentencing, the court noted it did not mean to say Durham needed a GPS unit attached to him, or some other like means,

---

[12]In his brief, Durham also challenged a special condition prohibiting unsupervised contact with minors. Durham withdrew his objection to this condition at oral argument, however, and therefore the issue is no longer before us. See United States v. Little Hawk, 449 F.3d 837, 839 n. 2 (8th Cir. 2006).

because "that probably would not be necessary," but the court noted the option was left to the probation office to decide whether such means were necessary.

Durham contends the condition involves a greater deprivation of liberty than is reasonably necessary under the circumstances because it is not reasonably related to the § 3553(a) factors such as promoting deterrence, protecting the public, and advancing his correctional needs. Durham also asserts, despite his objection at sentencing, the district court did not explain why it was imposing the tracking condition–it only explained how it intended the probation office to carry out the condition if it deemed the condition necessary. Instead, he points out the probation office will know his general whereabouts because of his sex offender registration requirement, and the court failed to articulate how precise tracking was reasonably related to his history and characteristics, the nature of the offense, or any other factor.

"Conditions delegating limited authority to non judicial officials such as probation officers are permissible so long as the delegating judicial officer retains and exercises ultimate responsibility." United States v. Mickelson, 433 F.3d 1050, 1056 (8th Cir. 2006). In Mickelson, this court upheld a similar condition affording the probation office discretion to track the defendant's whereabouts in a receipt of child pornography case. Id. at 1056-57. The court noted flexible conditions such as this can serve a defendant's interests because they can be tailored to meet particular correctional needs. Id. at 1057. The court also recognized the district court maintained the ultimate authority over the defendant, and therefore there was no abuse of discretion. Id.; but see United States v. Baird, 276 Fed. Appx. 691, 692 (9th Cir. 2008) (vacating a GPS monitoring condition where the record was insufficiently developed to allow the court to review whether the condition was necessary in light of the § 3553(a) factors).

In light of Mickelson, we conclude the district court did not abuse its discretion in imposing Special Condition 2. The court indicated the conditions it imposed were

designed to assist Durham if he was tempted to have problems in the future. We also agree with the government that Durham's bond revocation during pretrial supervision for first degree forgery provides further support for the condition. This is particularly true in light of the magistrate judge's finding that Durham was a flight risk at the time, which indicates a need for greater monitoring. Moreover, the district court maintains the ultimate authority over Durham. Under these circumstances, the district court did not abuse its discretion in imposing Special Condition 2.

### 2. Child Pornography Ban

Durham next challenges Special Condition 7, which bars him from possessing child pornography. He asserts the district court's oral pronouncement conflicts with its written judgment, and thus the matter must be remanded so the written judgment can be modified to reflect the oral pronouncement. The court's two specific versions of the special condition are set forth below:

> Oral Pronouncement: A seventh added condition will be that during the time that the defendant has access to the internet, he shall not access any site or view any materials that are related or deemed to be child porn, or that could be characterized as being child porn, or otherwise illegal.

> Written Judgment: The defendant shall not access or possess child pornography.

Durham notes the mandatory requirement to not commit any new offenses already prohibits either variation of Special Condition 7. Regardless, he asserts the oral pronouncement prevails and the written judgment must be modified. The government acknowledges the two conditions do not track word-for-word, but it contends the discrepancy is innocuous and the written conditions do not conflict with the oral pronouncement.

"Where an oral sentence and the written judgment conflict, the oral sentence controls." United States v. Foster, 514 F.3d 821, 825 (8th Cir. 2008) (citation omitted). See also United States v. Tramp, 30 F.3d 1035, 1037 (8th Cir. 1994) ("The oral pronouncement by the sentencing court is the judgment of the court."). Here, we agree with the government that the court's written judgment does not conflict with its oral pronouncement. Under either variation, Durham is prohibited from accessing child pornography, which, as he concedes, is also prohibited by the mandatory requirement not to commit any new offenses. See United States v. Love, 593 F.3d 1, 10 (D.C. Cir. 2010) (holding any minor differences between the oral pronouncement and written judgment did not require remand). We therefore reject Durham's argument with regard to Special Condition 7.

### 3. Restriction on Internet Access

Finally, Durham challenges Special Condition 5, which restricts his internet access without prior approval from the probation office. I concur with the judgment of the court announced in Judge Gruender's separate opinion that the district court's written judgment conflicts with its earlier oral pronouncement on Special Condition 5 because it substantially broadens the restriction placed upon Durham by focusing on any *device* with internet capabilities, which could be read to ban cell phones, portable music players, televisions, and a myriad of other devices.

In addition, I believe the internet restriction under Special Condition 5 provides a greater deprivation of liberty than is reasonably necessary, and therefore I would vacate and remand the district court's imposition of that condition. As a result, I dissent from the judgment of the court announced in Judge Gruender's separate opinion that the district court did not commit plain error in imposing Special Condition 5.

Unlike the tracking condition above, Durham did not object to the condition at sentencing, and therefore the condition is reviewed for plain error. United States v. Camp, 410 F.3d 1042, 1044 (8th Cir. 2005). "Plain error occurs if the district court errs, the error is clear under current law, and the error affects the defendant's substantial rights." United States v. Kreitinger, 576 F.3d 500, 505 (8th Cir. 2009).

As an initial matter, Durham contends the plain error review should be relaxed in this case because of the nature of the sentencing context, which would not require a new trial, but merely a remand for resentencing or a modification of conditions. United States v. Sofsky, 287 F.3d 122, 125 (2d Cir. 2002). However, he acknowledges the Eighth Circuit rejected this approach in United States v. Ristine, 335 F.3d 692, 694 (8th Cir. 2003) and instead applied a plain error standard. Because our panel is bound by Ristine, I would decline Durham's invitation to apply a relaxed plain error standard. United States v. Craddock, 593 F.3d 699, 702 (8th Cir. 2010) ("Even if we found this argument persuasive, we are without the authority to overrule the decisions of a prior panel of this circuit.") (citation omitted).

In assessing Durham's challenge to Special Condition 5, I find persuasive the court's analysis in United States v. Crume, 422 F.3d 728, 733 (8th Cir. 2005), which reversed a condition banning all internet usage for a defendant convicted of receiving child pornography. Crume noted that, "[a]lthough the district court is entrusted with broad discretion to fashion special conditions of supervised release, we are particularly reluctant to uphold sweeping restrictions on important constitutional rights." Id. Crume distinguished prior cases because even though the defendant had a lengthy history of grievous sexual misconduct, there was no evidence he used the computer or internet for anything more than mere possession of child pornography. Id. The court was "not convinced that a broad ban from such an important medium of communication, commerce, and information-gathering is necessary given the absence of evidence demonstrating more serious abuses of computers or the Internet." Id. In addition, Crume held the district court could "impose a more narrowly-tailored

restriction on [the defendant's] computer use through a prohibition on accessing certain categories of websites and Internet content and can sufficiently ensure his compliance with this condition through some combination of random searches and software that filters objectionable material." Id.

Since Crume, this court has continued to analyze whether the defendant used his computer to do more than merely possess child pornography in determining whether similar conditions should be upheld. For example, in United States v. Bender, 566 F.3d 748, 751-52 (8th Cir. 2009), the court upheld a ban on computer and internet usage for a defendant who arranged on-line to meet a woman for sexual relations and pursued a relationship with her despite discovering she was a minor. Similarly, in United States v. Alvarez, 478 F.3d 864, 867 (8th Cir. 2007), this court concluded an internet ban was justified for a defendant who admitted material he found online contributed to his sexual contact with a minor. Alvarez distinguished Crume by noting the defendant's statements and actions "may be interpreted to suggest that online material provides him encouraging, actionable ideas." Id. Finally, in Stults, this court upheld a condition barring internet access based in part on the defendant's sophistication with computers and his large database of illicit materials. Stults, 575 F.3d at 856. The defendant in Stults maintained unlimited access to computers for his employment purposes. Id.

Under the instant facts, I am not convinced Durham used his computer or internet access for anything other than possessing child pornography.[13] "As Crume

---

[13]The government claims Durham used his computer for more than collecting child pornography, including allegedly storing pictures of himself masturbating. The government also alleges Durham showed his daughter a picture of a woman performing oral sex on a man in an effort to educate her about the dangers of the internet. Durham allegedly admitted to this instance, but it was disputed at the sentencing hearing, and even Barrios concluded in his testimony that the incident did not actually take place after interviewing Durham's daughter and friends.

-24-

and the decisions from other circuits illustrate, a complete ban on Internet access is difficult to justify as a least restrictive means of satisfying the statutory objectives of supervised release in the case of a defendant whose criminal conduct involved simple possession of child pornography." United States v. Mark, 425 F.3d 505, 510 (8th Cir. 2005). I believe the record in this case, like Crume, is not sufficient to justify a complete ban on internet access and I would conclude the district court plainly erred by imposing Special Condition 5. Whether other alternatives may be appropriate, such as filtering programs, cannot be ascertained from the current record. Nor is it clear why the district court apparently believed Durham's regular probation supervision would be inadequate to protect the public and deter future conduct. As in Crume, I am confident the district court could impose a more narrowly-tailored restriction on Durham's computer use to ensure his compliance with the condition.

III

For the foregoing reasons, we conclude the district court improperly calculated Durham's Guidelines range by imposing a two-level distribution enhancement. We reverse and remand for resentencing, at which time the district court may consider whether Durham is entitled to a further two-level reduction under § 2G2.2(b)(1). However, we affirm the district court's imposition of Special Condition 2, which authorizes the probation office to track Durham's whereabouts, as well as Special Condition 7, which prohibits Durham from accessing child pornography.

BEAM, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's opinion except for Part II.B.3. With respect to that part, I join Part II. of Judge Gruender's opinion concurring, dissenting and in part announcing the judgment of the court.

GRUENDER, Circuit Judge, concurring in part, dissenting in part, and announcing the judgment of the court in part.

I agree with the majority's conclusion that the district court did not abuse its discretion in imposing the special condition of supervised release concerning the probation office's authority to track Durham's whereabouts ("Special Condition 2"). I also agree with the conclusion that there is no meaningful conflict between the district court's oral pronouncement of the special condition prohibiting Durham from accessing child pornography ("Special Condition 7") and the description of that condition in the written judgment. I do not agree, however, with the majority's conclusion that the district court improperly applied the two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution of material involving the sexual exploitation of a minor. Accordingly, I join Parts II.B.1 and II.B.2 of Judge Bye's partial majority opinion, but I respectfully dissent from the outcome and rationale set forth in Part II.A. As to the special condition restricting Durham's access to the Internet ("Special Condition 5"), this opinion announces the judgment of the court. Although we conclude that the district court did not commit plain error in imposing Special Condition 5, we remand with instructions to amend the relevant portion of the written judgment to conform to the district court's oral pronouncement.

I.

Regarding the distribution enhancement, the dispositive question is whether the district court clearly erred in finding that Durham distributed child pornography. *See United States v. Dodd*, 598 F.3d 449, 451 (8th Cir. 2010) (noting that deciding whether a defendant qualifies for the distribution enhancement is "a fact-intensive inquiry," and thus applying the deferential "clear error" standard of appellate review), *cert. denied*, 561 U.S. ---, 2010 WL 2191746 (June 28, 2010); *see also United States v. Bates*, 584 F.3d 1105, 1108 (8th Cir. 2009) ("We review the district court's interpretation and application of the guidelines *de novo* and its factual findings for

clear error." (citing *United States v. Pate*, 518 F.3d 972, 975 (8th Cir. 2008))). It bears repeating that the relevant application note defines "distribution" to include "posting material involving the sexual exploitation of a minor on a website for public viewing." U.S.S.G. § 2G2.2 cmt. n.1. Based on this application note, along with the ordinary meaning of the applicable terms, we recently held that "distribution as defined in [section] 2G2.2 includes operating a file sharing program that enables other participating users to access and download files placed in a shared folder, and then placing child pornography files in that folder." *Dodd*, 598 F.3d at 452-53.

The majority acknowledges that our prior cases have upheld the application of "distribution enhancements"—*viz.*, the two-level enhancement under section 2G2.2(b)(3)(F) and the five-level enhancement under section 2G2.2(b)(3)(B), which requires distribution in exchange for the receipt or the expectation of receipt of a thing of value—based on the defendant's having some amount of "sophistication" about the file-sharing program he used to acquire child pornography. *Ante*, at 12 (citing *United States v. Estey*, 595 F.3d 836, 844 (8th Cir.), *cert. denied*, 560 U.S. ---, 130 S. Ct. 3342 (2010); *United States v. Ultsch*, 578 F.3d 827, 830 (8th Cir. 2009); *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009), *cert. denied*, 559 U.S. ---, 130 S. Ct. 1309 (2010)). And the majority notes that in this case, the district court "evoked the familiar sophistication basis for . . . [applying] the distribution enhancement," finding that "Durham was 'very knowledgeable' about Limewire's capabilities." *Ante*, at 12. Yet the majority concludes that it was improper for the district court to apply the distribution enhancement. *See ante*, at 18. The majority gives three reasons.

First, the majority says that the district court's finding about Durham's sophistication "appears to be contradictory to the evidence in the record." *Ante*, at 13. Second, the majority says that the district court "violated [a] well-established principle of our case law by automatically applying the distribution enhancement based on Durham's use of a file-sharing program." *Ante*, at 16. Third, the majority says that

-27-

"this matter is distinguishable from *Dodd* because . . . Durham presented 'concrete evidence' of his ignorance." *Ante*, at 17-18. I disagree on all counts.

The majority's first and third reasons overlap, so I will discuss them together. As an initial matter, there is ample evidence in the record to support the district court's finding that Durham knew how LimeWire worked. For instance, the stipulated factual basis in the plea agreement and undisputed portions of the presentence investigation report established the following facts:

•Police identified at least 59 files containing known or suspected depictions of child pornography that had been posted on LimeWire—and which were therefore accessible to the public—by a computer user whose Internet Protocol address was traced back to Durham's home.

•Police found nearly 50 videos and more than 400 images containing child pornography on a computer seized from Durham's home.

•Durham admitted to police that he employed LimeWire to download child pornography, searching for illicit videos and images using terms such as "kid sex" and "teen sex."

•Although Durham's computer had several user profiles, all of the depictions of child pornography stored on the computer were located under Durham's password-protected profile.

At the sentencing hearing, Detective Al Barrios of the Springdale, Arkansas Police Department testified at length about the investigation into Durham's criminal activity. One of the things Detective Barrios discussed was a user-created desktop icon found under Durham's profile, named "shared-shortcut" or "shared desk-shortcut." According to Detective Barrios, a user who double-clicked on that icon would go directly to the shared folder associated with Durham's LimeWire account. Detective Barrios reported that he "uncovered evidence that . . . child notable files [*i.e.*, files containing known or suspected depictions of child pornography]" had been

-28-

"downloaded with Limewire and . . . saved in [Durham's] shared folder," but "none of them were present [in the shared folder]" when the computer was seized.

Detective Barrios also testified about how LimeWire works and what a typical user would learn about that program over time. In particular, Detective Barrios told the district court about various ways a user could discover that files were being uploaded from his shared folder by other users. To take just one example, Detective Barrios directed the court's attention to up and down arrows displayed on a screen shot taken from Durham's computer. These arrows, Detective Barrios explained, would have showed active file transfers being conducted through LimeWire—both downloads to Durham's shared folder and uploads by other users from Durham's shared folder. In response to follow-up questions posed by the district court, Detective Barrios testified that it was "[b]arely possible" that files could be shared on LimeWire without the user's knowledge, but only if the user had very limited experience with file sharing. Detective Barrios went on to say that "[a]ny person who's used that program for months would be able to see file transfers as they were taking place, including downloads and uploads," thereby suggesting that it would be unlikely for an experienced user to share files inadvertently.

The majority gives short shrift to most of this evidence. The majority does, however, discuss two items: Durham's admission that he used search terms such as "kid sex" and "teen sex" to search for child pornography, *ante*, at 14 n.4, and the desktop shortcut to Durham's shared folder, *ante*, at 13-14. The majority asserts that the search terms and the shortcut are not relevant because they prove only that Durham desired to (and did) *download* child pornography, and hence do not qualify as "indicia of distribution." *Ante*, at 14 & n.4. Here, the majority has created and dispatched a straw man. What counts under *Estey*, *Ultsch*, and *Stults* is whether Durham had knowledge about how LimeWire worked. The evidence that the majority rejects is plainly relevant to deciding how much Durham knew about the file-sharing program he used to acquire child pornography, even if it does not conclusively prove

-29-

that he intentionally distributed illicit files. The presence on his desktop of a shortcut to a folder whose name included the word "shared," and which at one time stored files containing child pornography, strikes me as especially probative.

In any event, the two disputed items should not be considered in isolation. The other facts introduced above proved that Durham used LimeWire to acquire a large collection of child pornography. And Detective Barrios's testimony confirmed that an experienced user of LimeWire could scarcely avoid learning that files stored in his shared folder were accessible by other users (though that fact was already evident to anyone familiar with popular peer-to-peer file-sharing programs, such as LimeWire). Considered as a whole, the evidence in the record was more than sufficient to support a finding that Durham was a sophisticated member of LimeWire's peer-to-peer network, that he understood how file sharing worked, and that he knowingly used LimeWire to distribute child pornography.

If there was any residual doubt on this point, it ought to have been dispelled by our recent decision in *Dodd*. There, we noted that "[o]ne can hypothesize . . . that even a defendant who pleaded guilty to knowing receipt and possession [of child pornography] might have no knowledge that his computer was equipped to distribute." 598 F.3d at 452. But we observed that "[t]he purpose of a file sharing program is to share, in other words, to distribute." *Id.* Thus, we held that "[a]bsent concrete *evidence* of ignorance—evidence that is needed because ignorance is entirely counterintuitive—a fact-finder may reasonably infer that the defendant knowingly employed a file sharing program for its intended purpose." *Id.* In *Dodd*, we affirmed the district court's application of the distribution enhancement even though the Government presented no evidence at sentencing. *See id.* at 451. After *Dodd*, the notion that we may overturn the district court's application of the distribution enhancement due merely to a lack of *supporting* evidence (beyond Durham's extensive use of LimeWire) would be difficult or impossible to maintain.

-30-

It is possible, of course, that Durham presented adequate evidence of ignorance to undermine the district court's finding that he distributed child pornography.  The majority suggests that Durham did so by eliciting testimony from his brother, Casey.  *See ante*, at 12-13, 17-18.  As the majority recounts, "Casey indicated [that] he installed Limewire on Durham's computer, [that] he did not instruct Durham on how to use the program, and [that] Durham was not knowledgeable regarding the program's capabilities."  *Ante*, at 18.  The majority holds that this testimony constitutes "concrete evidence" of Durham's ignorance, *ante*, at 17-18, and concludes that "even under the stricter *Dodd* standard, the district court's application of the distribution enhancement was improper," *ante*, at 18.

I am skeptical that the opinion of a defendant's sibling concerning the extent of the defendant's sophistication is the kind of "concrete evidence" that the court in *Dodd* had in mind.  Nevertheless, even assuming that Casey Durham's testimony was relevant and probative, it does not follow that his testimony seriously undermined the district court's finding that the defendant was "very knowledgeable" about how LimeWire worked.  At most, Casey Durham's testimony left the district court with a choice between two permissible views of the evidence.  *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).  Whether we think the district court adopted the more plausible view is of no moment, for "[w]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous," *id.* (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)).  *See also United States v. Tournier*, 171 F.3d 645, 648 (8th Cir. 1999) ("Under the clear error standard, we need not agree with the district court's findings of disputed fact to affirm.").  This unexceptional principle is entirely consistent with the court's reasoning in *Dodd*, so I reject the majority's suggestion that *Dodd* can be distinguished away.[14]

---

[14]I likewise reject Durham's implication that this panel can either disregard *Dodd* or hold that *Dodd* was wrongly decided.  *See ante*, at 17 n.9.  As we have said many times, "[o]ne panel of this Court is not at liberty to disregard a precedent handed

That leaves the majority's assertion that the district court "violated [a] well-established principle of our case law by automatically applying the distribution enhancement based on Durham's use of a file-sharing program," *ante*, at 16. *See also Dodd*, 598 F.3d at 452 n.2 ("[O]ur decisions applying [*United States v. Griffin*, 482 F.3d 1008 (8th Cir. 2007)] have made clear that the government must prove that [a] defendant expected to receive a thing of value on a case-by-case basis, but the issue can be proved by circumstantial evidence. The same analysis applies to the two-level distribution enhancement." (internal citations omitted)). In my view, the proposition that the district court automatically applied the enhancement is inconsistent with the majority's earlier statement that the district court "evoked the familiar sophistication basis for . . . [applying] the distribution enhancement, as it concluded [that] Durham was 'very knowledgeable' about Limewire's capabilities," *ante*, at 12. If the district court made a factual finding about Durham's sophistication—and the majority says that it did, *see ante*, at 12—then the district court's application of the distribution enhancement could not have been automatic.

The automatic application theory is flawed in another way: namely, it is incompatible with any fair reading of the district court's comments at the sentencing hearing. This conclusion becomes virtually inescapable once the district court's comments—quoted selectively and interpreted uncharitably by the majority—are placed in context. Here, then, is a slightly abridged version of what the district court said in ruling on the enhancement, starting on page 75 of the sentencing transcript (page 90 of the consolidated transcript of the change of plea and sentencing hearings):

---

down by another panel," *United States v. Zuniga*, 579 F.3d 845, 848 (8th Cir. 2009) (per curiam) (alteration in original) (quoting *Drake v. Scott*, 812 F.2d 395, 400 (8th Cir. 1987)), *cert. denied*, 560 U.S. ---, 2010 WL 2243722 (June 7, 2010), and "[o]nly the court en banc may overrule circuit precedent, subject to a limited exception in the case of an intervening Supreme Court decision that is inconsistent with circuit precedent," *id.* (citing *Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000)).

All right.  Ladies and gentlemen, at issue here is the provision or the part of the Pre-sentence Investigation Report that was prepared by Mr. Scott [a U.S. Probation Officer], which opines and states that he believes that there is a specific offense characteristic that warrants the addition of two points to the total offense level.  The base total offense level started at 22, as shown by Paragraph 31 of the Pre-sentence Investigation Report, and had a two-point increase under Paragraph 32. The challenged increase is under Paragraph 33.

. . . .

Now, in the commentary to [section 2G2.2], there is a definition[] section under Application Note 1:  "'Distribution' means any act, including possession with intent to distribute, production, advertisement, and transportation[,] related to the transfer of material involving the sexual exploitation of a minor.  Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing, but does not include the mere solicitation of such material by a defendant."

So I think the question becomes, under the circumstances here shown by the proof, . . . whether there was a "posting" of the material. I haven't heard any evidence that would persuade me that the defendant possessed with intent to distribute or advertise or transport, but I think that there is evidence to indicate that this material was posted because it was placed on a Limewire program, the signal, and perhaps only purpose of which is to do that very thing, to post it to permit it to be shared by any and all who might choose to access that site.

. . . [T]he defense's posture is, well, that may all be true, but it is not shown, and cannot be shown, at least to the defendant's satisfaction, that he knew that would be the case, that if these materials were placed in the Limewire system, or whatever it is, that that could amount to a posting, which would make it available for public viewing.

The defendant, of course, has not testified. He has no obligation to do so, but he has not indicated what his thoughts were. . . . [I]n the body of the [presentence] report, there is a recounting of what he did say when he was interviewed, and he—according to the report, which these portions are not objected to, he was asked if he downloaded a lot of stuff to the computer, and he said he used Limewire to download songs. When told that they, the detectives, were aware that there was child porn on his computer and they wanted to know who was responsible for it, he initially advised the detectives that he "doesn't look at that stuff".

When told his computer had a lot of activity regarding child pornography, Durham responded that he watches a lot of "To Catch a Predator". Durham was asked, and agreed to an interview later at the Springdale Police Department . . . . During that interview, he admitted to showing his daughter a picture of a 12-year[-]old girl performing oral sex on a man for educational purposes. Durham explained that he showed this picture to his daughter to tell her this could happen to her if she was not careful on the internet. Whether the picture came from the internet is not clear. It hasn't been shown to me one way or the other.

[Durham] stated he and his daughter then watched "To Catch a Predator". Durham then admitted to looking at 30 to 40 images of 12-year[-]old girls, etcetera, etcetera. He said that he would type in certain terms on Limewire to download these images.

Now, based on that and the testimony that I have heard here, *it would seem to me that the defendant was very knowledgeable that the Limewire program would permit him to access . . . and download child porn as and when he chose, without getting any permission from anybody*, but that that feature would permit him to do that. It's strange credulity [read: "*It strains credulity*"] *to reason that he would not, by that knowledge, understand that it's a two-way street*[;] that if he could do that, it's quite likely that others could as well.

His brother testified, I think quite candidly, that he well knew what that program was and how it was easily accessible. I think the

-34-

difficulty with the Government's proof here is they have no statement from Mr. Durham saying that he knew that, and that he was aware when he posted these images on Limewire that the public could access it, even as he could and did from other sites. But the absence of direct evidence on that, I don't think curtails or forbids a conclusion that he did know.

. . . .

The default program on the computer, its existence, I think, is troubling initially, but *when it is seen that the defendant was knowledgeable enough, from however source he gained his knowledge, to enter his own profile and to make certain changes to those defaults, one of which [was] to select and utilize an icon that specifically mentions share[d] files, it sort of defies common sense to think that a person who could and would do that would not believe that someone other than himself could access the files that were on that Limewire since, of course, he . . . himself could do it.*

. . . [T]he proof standard that I have in a sentencing hearing is not proof beyond a reasonable doubt, but a far lesser standard that is more likely than not, or basically a preponderance of the evidence, if you will. Judged by that standard, *I am not able to say that I can conclude that Mr. Durham did not know that the images that he downloaded and had present and posted on his Limewire program were not accessible to the public*, and so I will overrule the objection. I do think the two-point enhancement is appropriate, so I will overrule the objection on that score.

(Emphasis added.)

Durham's attorney, James Pierce, then moved for a two-level reduction under section 2G2.2(b)(1), which applies only if "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor." Having found seconds earlier that Durham's conduct was not limited to receipt or

-35-

solicitation, the district court could have summarily rejected the requested reduction. Instead, the district court gave this additional explanation:

> Well, with respect, I don't think that the section you mentioned, Mr. Pierce, is applicable by its own terms. And I did read them earlier. I'll mention them again. Under [subsection (b)], specific offense characteristics, . . . "If (A)"—and that's the first prong— . . . "[subsection (a)(2)] applies"—and it does because there's a 22 awarded—"and (B) the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor."
>
> Based upon my ruling and what I've heard, his conduct was not limited to that because it [*i.e.*, child pornography] was posted on the Limewire. He could have received it [*i.e.*, child pornography], it seems to me, or solicited it [*i.e.*, child pornography] without utilizing a program which featured automatic file-sharing. So I don't think he qualifies for that provision. So I'll deny your motion for that reason.[15]

Considering all of the district court's analysis, and giving substantial weight to the comments placed in italics, I am convinced that the district court's ruling on the distribution enhancement was proper in all respects. The district court's extensive discussion of the issue, culminating in a factual finding about Durham's sophistication, refutes the proposition that the court applied the enhancement

---

[15]The majority suggests that the last quoted paragraph is the best evidence that the district court applied the distribution enhancement automatically, stating that the district court "explicitly concluded Durham could have avoided the enhancement had he not used a file-sharing program." *Ante*, at 16-17. But the majority's interpretation cannot be correct, unless one assumes that the district court conflated the enhancement under section 2G2.2(b)(3)(F), which it had already granted, with the requested reduction under section 2G2.2(b)(1). Because the district court could not have granted the reduction without reversing the ruling it had made on the enhancement a few seconds earlier, the motion for a reduction was obviously doomed, and the district court would have been justified in rejecting the motion without further comment.

automatically. Indeed, if the district judge meant to avoid making an individualized determination, it would be passing strange for him to spend so many words explaining a supposedly automatic decision. Since I see no sound basis for concluding that the district court clearly erred in finding that Durham distributed child pornography, I would affirm the court's application of the enhancement under section 2G2.2(b)(3)(F).

## II.

Regarding Special Condition 5, this opinion, which Judge Beam joins in relevant part, announces the judgment of the court. We first address Durham's challenge to the district court's oral pronouncement restricting Durham's access to the Internet. Durham did not object to Special Condition 5 at sentencing, so our review is for plain error. *See, e.g.*, *United States v. Kerr*, 472 F.3d 517, 521 (8th Cir. 2006). Because we conclude that the district court did not commit plain error in imposing this special condition, we go on to consider Durham's alternative claim, that the district court's oral pronouncement is inconsistent with the description of Special Condition 5 in the written judgment.

For the purpose of reviewing Durham's plain error challenge, we assume that Special Condition 5 is limited to what the district court pronounced at sentencing; specifically: "A fifth added condition will be the defendant shall not access the internet from any location without prior approval by the probation office and for a justified and not prohibited reason. The defendant, however, shall not have internet access at his residence." As Durham recognizes, albeit with a little equivocation, our decision in *United States v. Ristine*, 335 F.3d 692 (8th Cir. 2003), precludes us from applying a "relaxed" version of the plain error standard. (There is no dissent on this point, *see ante*, at 23.) On the merits, we are not persuaded by Durham's argument that the district court committed plain error in imposing Special Condition 5. *See Kerr*, 472 F.3d at 520-21 ("Plain error occurs if the district court deviates from a legal rule, the error is clear under current law, and the error affects the defendant's

substantial rights." (quoting *United States v. Crose*, 284 F.3d 911, 912 (8th Cir. 2002) (per curiam))).

While a sentencing court has "wide discretion" to impose special conditions of supervised release, such conditions must satisfy the requirements set out in 18 U.S.C. § 3583(d). *United States v. Crume*, 422 F.3d 728, 732-33 (8th Cir. 2005).

> First, the special conditions must be "reasonably related" to . . . the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical or other correctional needs. Second, the conditions must "involve[] no greater deprivation of liberty than is reasonably necessary" to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant's correctional needs. Finally, the conditions must be consistent with any pertinent policy statements issued by the [United States Sentencing Commission].

*Id.* at 733 (second alteration in original) (citations omitted).

Durham does not argue that Special Condition 5 is inconsistent with any pertinent policy statement. And there is no real doubt that restricting Durham's access to the Internet is reasonably related to the nature and circumstances of the offense—which, at a minimum, involved using LimeWire to acquire a large collection of child pornography. *See United States v. Bender*, 566 F.3d 748, 751 (8th Cir. 2009); *United States v. Mark*, 425 F.3d 505, 509 (8th Cir. 2005). Moreover, we are satisfied that the challenged condition is designed to deter similar criminal conduct, to protect the public from further crimes that Durham might otherwise perpetrate, and to serve Durham's correctional needs. *See Bender*, 566 F.3d at 751; *Mark*, 425 F.3d at 509.

The question, then, is whether Special Condition 5 involves a greater deprivation of liberty than is reasonably necessary under the circumstances. We are

convinced that the answer is "no," for two principal reasons. First, Special Condition 5 does not amount to a complete ban on Internet access. *Contra ante*, at 25. In fact, the condition permits Durham to access the Internet as long as he obtains permission from the probation office. In reviewing similar conditions, we have found that restrictions on computer use and Internet access do not constitute a "total ban" where the defendant can seek permission from his probation officer to perform the restricted activities. *See United States v. Fields*, 324 F.3d 1025, 1027 (8th Cir. 2003); *see also Bender*, 566 F.3d at 751-52 (upholding a so-called "ban" on computer use and Internet access, in part because "[t]he ban allows [the defendant] to use a computer and internet with the permission of his probation officer"); *Ristine*, 335 F.3d at 695-96 (upholding a condition prohibiting the defendant, Ristine, from "owning or operating" a computer without the permission of his probation officer, in part because "Ristine—like the *Fields* defendant—is not wholly barred from using a computer"). Thus, Special Condition 5 must be treated as merely a partial deprivation of Durham's interest in having unfettered access to the Internet.

Second, this is not a case in which "the record is devoid of evidence that [the defendant] has ever used his computer for anything beyond simply possessing child pornography." *Cf. Crume*, 422 F.3d at 733. On the contrary, the record includes much evidence showing that Durham used his computer to distribute child pornography. *See supra* Part I. Even if one believes that the enhancement under section 2G2.2(b)(3)(F) should not have been applied due to Durham's alleged ignorance, it is still beyond dispute that at least 59 files containing known or suspected depictions of child pornography were posted on LimeWire—and therefore made accessible to the public—by a computer user whose Internet Protocol address was traced back to Durham's home.

Our precedents in this area establish that district courts may impose more restrictive conditions where, as here, a defendant's offense involved distribution of child pornography. *See Ristine*, 335 F.3d at 696; *Fields*, 324 F.3d at 1027; *see also*

*Kerr*, 472 F.3d at 523 ("We have found [that] child pornography distribution offenses are more serious than mere possession offenses." (citing *Fields*, 324 F.3d at 1027)). Because Special Condition 5 permits Durham to access the Internet as long as he obtains permission from the probation office, we see no sound basis for concluding that the condition involves a greater deprivation of liberty than is reasonably necessary under the circumstances. We therefore hold that the district court did not abuse its discretion, much less plainly err, in imposing Special Condition 5.

All that remains is to determine whether the district court's oral pronouncement is inconsistent with its written description of Special Condition 5. Recall that at sentencing, the district court said the following: "A fifth added condition will be the defendant shall not access the internet from any location without prior approval by the probation office and for a justified and not prohibited reason. The defendant, however, shall not have internet access at his residence." One day later, the district court entered a written judgment, which describes Special Condition 5 as follows: "The defendant shall not have access to an *internet-connected computer* or *other device with internet capabilities* or access the internet from any location without prior approval by the probation office and for a justified reason. The defendant shall not have internet access at his residence." (Emphasis added.) Durham suggests that the written judgment conflicts with the oral pronouncement because it broadens the restriction to extend to a vast array of modern devices, including many cell phones, portable media players, and televisions, among other things. The panel unanimously agrees that Durham's suggestion is correct. *See ante*, at 22.

Our cases make clear that "[w]here an oral sentence and the written judgment conflict, the oral sentence controls." *United States v. Foster*, 514 F.3d 821, 825 (8th Cir. 2008) (quoting *United States v. Glass*, 720 F.2d 21, 22 n.2 (8th Cir. 1983)). In this instance, we resolve the discrepancy by remanding with instructions to amend the relevant portion of the written judgment to conform to the oral pronouncement. *See,*

*e.g.*, *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005); *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001) (per curiam).

## III.

In summary, I join Parts II.B.1 and II.B.2 of Judge Bye's partial majority opinion, but I respectfully dissent from the outcome and rationale set forth in Part II.A. As to Special Condition 5, this opinion announces the judgment of the court. We conclude that the district court did not commit plain error in imposing Special Condition 5, but we remand with instructions to amend the written judgment to conform to the district court's oral pronouncement.

_____