# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1950

_____

United States of America,                    *
                                              *
        Plaintiff – Appellee,          *
                                              *
                                              *    Appeal from the United States
    v.                               *    District Court for the
                                              *    Southern District of Iowa
Jacob Benjamin Estey,                         *
                                              *
        Defendant – Appellant.         *

_____

Submitted: January 14, 2010
Filed: February 19, 2010

_____

Before MURPHY and BYE, Circuit Judges, and GOLDBERG,[1] Judge.

_____

GOLDBERG, Judge.

Defendant-Appellant Jacob Estey ("Estey" or "defendant") was convicted of one count of receipt of visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). He was sentenced to 210 months imprisonment. On appeal, Estey

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

argues the district court[2] erred in declining his motions to suppress, and abused its discretion in denying his motion for a new trial. He also contests the sentence imposed. We affirm.

## I. Background

A computer crime investigation unit in Spain informed the Federal Bureau of Investigation ("FBI") of computer IP addresses in the United States that were sharing child pornography using eDonkey and eMule peer-to-peer file-sharing software. One of the addresses matched the Des Moines residence of Estey. FBI Special Agent David Larson ("Larson") was assigned to work the suspected child pornography investigation in Des Moines. Larson obtained and executed a search warrant of Estey's residence.

During questioning, Estey admitted to FBI agents that he had copied programs containing child pornography onto disks when he disposed of his brother's computer and loaded the contents of the disks onto his own computer. Larson testified that Estey also admitted to going online and using the file-sharing software to collect child pornography. Images were found in the shared folder of the file-sharing software, allowing others to access the images on the internet. Photographs on Estey's computer corresponded to images discovered by the Spanish investigation unit. Hard drives and computer disks seized during the search of the residence revealed images of child pornography.

---

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

## II. Discussion

### A. The district court did not err in denying the motions to suppress.

Estey moved to suppress evidence on two grounds. First, he argued that his confession was elicited in violation of the Fifth Amendment; and, second, that the probable cause for the search warrant for his residence was stale, in violation of the Fourth Amendment. The district court did not err in denying both motions to suppress.

Estey contends that his confession was involuntary because it was obtained by a promise of leniency from law enforcement officers. Whether a confession was voluntary is a question of law subject to de novo review, but factual findings underlying a district court's decision are reviewed under a clearly erroneous standard. United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995). "The test for determining the voluntariness of a confession is whether the police extracted the confession by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008) (internal quotations omitted). Courts examine the totality of the circumstances in making this assessment. Id.

The record indicates that Estey's interview, including his confession, was voluntary. FBI agents appropriately advised Estey of his rights prior to a noncustodial interview. Estey was told that he did not have to speak with the FBI if he chose not to do so, that he had the right to refuse to answer all or any particular question, and that he was free to leave. The practice of agents providing such advice is a proper method to ensure that a noncustodial interview is not misinterpreted as a custodial interrogation and to avoid Miranda problems. See United States v. Bordeaux, 400 F.3d 548, 559-60 (8th Cir. 2005).

Estey's claim appears based on the notion that he misunderstood the assurance of FBI agents that he was not under arrest at that time, nor would he be under arrest at the end of the interview, to be an offer of total immunity. However, these statements were clearly not a promise of total immunity nor were they an assurance precluding future prosecution. In fact, during the interview, Estey asked the FBI how much prison time he could expect to serve, indicating that he did not understand the statement as a promise of total immunity. Estey does not cite to any other conduct, expressed or implied, suggesting his will was overborne and he was coerced to confess. In short, the totality of the circumstances do not indicate that Estey's will was overborne by the conduct of the law enforcement agents. Therefore, the district court properly denied the motion to suppress the confession.

Estey also challenges the district court's denial of his motion to suppress evidence seized during the search of his residence. In a suppression hearing, the district court ruled that the five-month delay prior to executing the warrant did not render the warrant invalid. The district court based its ruling on prior court decisions and FBI testimony explaining that child pornographers commonly retain pornography for a lengthy period of time. As further justification for its decision, the court added that individuals in a one-story house are unlikely to either move or replace computers within such a short span; there was, therefore, only a minuscule possibility that no illicit images would be found on the computer. On appeal, Estey argues that the district court erred because the search warrant was based on stale information and therefore lacked probable cause. "We examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Williams, 577 F.3d 878, 880 (8th Cir. 2009), citing United States v. Walsh, 299 F.3d 729, 730 (8th Cir. 2002).

Probable cause for a warrant search "exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Hartje, 251 F.3d 771, 774 (8th Cir. 2001). "A warrant becomes stale if the

information supporting is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." United States v. Brewer, 588 F.3d 1165, 1173 (8th Cir. 2008 ) (internal quotations omitted). "There is no bright-line test for determining when information is stale…time factors must be examined in the context of a specific case and the nature of the crime under investigation." United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007). The factors in determining whether probable cause has dissipated, rendering the warrant fatally stale, "include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." United States v. Gibson, 123 F.3d 1121, 1124 (8th Cir. 1997).

We agree with the district court's determination that the information in the search warrant was not stale. While Estey is correct to note there are outer limits to the use of such evidence, this case involves a search warrant issued five months after discovering information linking the defendant's residence with child pornography. This Court, and others, have held that evidence developed within several months of an application for a search warrant for a child pornography collection and related evidence is not stale. See, e.g., United States v. Horn, 187 F.3d 781, 786-787 (8th Cir 1999) (warrant not stale three or four months after child pornography information was developed); United States v. Davis, 313 Fed. Appx. 672, 674, (4th Cir. 2009) (holding that information a year old is not stale as a matter of law in child pornography cases); United States v. Hay, 231 F.3d 630, 636 (9th Cir. 2000) (warrant not stale for child pornography based on six-month old information); United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997) (warrant upheld for child pornography based on ten month old information). Furthermore, in denying Estey's motion, the district court noted that this Court has acknowledged similar observations to the FBI agent's statements about the habits of child pornography collectors. See United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002). Meanwhile, Estey does not offer evidence contrary to the FBI statements regarding the habits of child pornography collectors. Given the circumstances of the case and the nature of the crime, the

execution of the warrant five months after the development of the information did not render the warrant deficient in any respect based on stale information. Estey's motion to suppress was properly denied.

### B. The district court did not abuse its discretion in denying Estey's motion for a new trial.

Estey also contests the district court's denial of his motion for a new trial. Estey's motion relates to the conduct of a juror during voir dire. The juror in question was a frequent contributor to the website ratemybody.com. The website positions itself as a dating website and allows people to rate people's attractiveness. It does not mention or allude to pornography or obscenity. The website contains a public bulletin board where members can discuss a variety of topics of general interest.

To obtain a new trial due to juror dishonesty during voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire and then further show that a correct response would have provided a valid basis for challenge for cause." McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556, 104 S. Ct. 845 (1984). Under this standard, "only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." Id. Estey's argument that the district court abused its discretion in denying his motion for a new trial because a juror lied about a material matter during voir dire is unpersuasive.

Estey fails to establish that the juror at issue answered a question dishonestly. During voir dire, the defendant's counsel asked the venire jury panel the following: "[a]nybody here ever written [sic] a letter to the editor, anybody else or called into a radio program or made a public speech or anything on any subject related to this?...Does anybody belong to any groups that have a position on this type of subject matter?" The district court correctly found that there was no evidence that the juror answered dishonestly since there is no evidence that the juror ever wrote publicly about child pornography or obscenity or that he belonged to a group with a position

-6-

on this subject matter. In essence, Estey is accusing the juror of lying in response to a question that was not asked. Estey attempts to frame the subject as the exchange of materials of a sexual nature on the internet. However, Estey's charges clearly relate to child pornography, not the exchange of materials of a sexual nature, which is not a federal crime. In fact, there is no indication that the juror wrote or exchanged materials of a sexual nature. Furthermore, a defendant is not entitled to a new trial when any problem with a juror's answer during voir dire was caused by the poor quality of the question asked. See United States v. Williams, 77 F.3d 1098, 1100-01 (8th Cir. 1996). Thus, had Estey's counsel intended to ask broader questions about sexuality in general, the counsel could have done so.

Nor has Estey established that the juror was motivated by actual partiality. See United States v. Tucker, 137 F.3d 1016, 1029 (8th Cir. 1998) (to challenge a juror for cause, a party must show actual partiality growing out of the nature and circumstances of the specific case). The juror's contributions to the website do not establish bias and nothing in the record establishes that the juror had any impressions or opinions impacting his ability to be impartial. See Moran v. Clarke, 443 F.3d 646, 650-51 (8th Cir. 2006) ("Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position.").

Estey fails to prove that the juror's contributions to the website, if known, would have supported striking him for cause. See Tucker, 137 F.3d at 1029. Here, the juror made comments on the bulletin board of the website after the petit jury was empaneled but before the jury verdict. The juror stated that he had jury duty for a federal case. The juror did not post comments about the substance of the trial until after the verdict. The juror's failure to disclose his website postings during the trial do not amount to concealing a material fact. Immaterial statements by a juror about the trial, such as about scheduling, are neither prohibited nor prejudicial. United States v. Tucker, 243 F.3d 499, 510 (8th Cir. 2001). While Estey argues that the juror may have spoken privately with forum members about the trial, there is no evidence of this, and the allegation is purely speculative. See United States v. Whiting, 538

-7-

F.2d 220, 223 (8th Cir. 1976) ("Where an attack is made upon the integrity of the trial by reason of alleged misconduct on the part of a juror in failing to disclose information pertinent to the issue of prejudice, the defendant's burden of proof must be sustained not as a matter of speculation, but as a demonstrable reality.").

Estey cannot show that the juror answered a question dishonestly, that the juror was motivated by partiality, and that the facts, if known, would have supported striking the juror for cause. Consequently, the district court did not abuse its discretion in overruling Estey's motion for a new trial.

Estey further argues that the district court should have recused itself from ruling on his motion for a new trial. Estey's claim that the presiding judge should have recused himself pursuant to 28 U.S.C. § 455 (b)(1) also relates to the alleged misconduct by the juror in question. On December 5, 2008, the presiding judge learned of the juror's internet activity and spoke with both counsel with the understanding that a motion would be filed on Estey's behalf. The following day, the judge had a dinner party with current staff and former clerks. The judge briefly mentioned that he had the unusual experience of a juror engaging in an online chat during and immediately after the trial. No other details were provided. At some subsequent point, the Court learned that one of the individuals present at that conversation apparently was a co-worker of the juror. The individual knew that his co-worker had been a juror in a federal case the prior week. On Monday, December 8, the juror's online profile and information at ratemybody.com had been deleted. The judge then sent a letter to both counsel disclosing this information and stating that he was personally aware of circumstances that may have contributed to the deletion of online material.

A district court's denial of a motion for recusal is reviewed for abuse of discretion. See, e.g., United States v. Tucker, 82 F.3d 1423, 1425 (8th Cir. 1996); Pope v. Fed. Express Corp., 974 F.2d 982, 985 (8th Cir. 1992). A federal judge must recuse himself from a case if he has "a personal bias or prejudice concerning a party,

or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455 (b)(1).

Estey's claim that the presiding judge had personal knowledge of disputed evidentiary facts concerning the proceeding is completely without merit. The central issue in Estey's motion, which Estey admits, is the credibility of the juror and whether the juror belongs to groups dealing with the type of subject matter that was the focus of the trial. Nothing in the record suggests that the judge had any personal knowledge about the juror's affiliation with groups involved with pornography or obscenity nor does the record indicate any knowledge by the court about the juror ever expressing public opinions on this subject matter.

Although Estey does not suggest the district court acted improperly, he claims the judge inadvertently became a material witness because the judge was the only person with knowledge that the defendant's counsel had communicated the basis of the motion for a new trial to the court. The judge then mentioned the basis of the motion for a new trial to a co-worker of the juror in question before defense counsel had filed the motion. However, the judge never suggested that a post trial motion was expected nor did he discuss any confidential information. More fundamentally, the judge did not have any more information about the juror's acts and opinions than the information obtained by the parties themselves after reviewing the voir dire questions and reading the juror's website postings. The judge took practical steps by disclosing fully to the parties the rather unusual circumstances that may have contributed to the deletion of online material. The judge promptly informed the parties that it appeared that a comment was made to the juror that may have prompted him to delete his online profile. The judge clearly stated that no confidential information was imparted at the dinner.

Nothing in the record establishes that the district court had any insight into the juror who was the focus of the new trial motion. Since the district court did not have personal knowledge of disputed evidentiary facts, the court did not abuse its discretion in denying the motion to recuse.

C.  The two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) was properly applied.

Estey also objects to the two-level sentencing enhancement imposed by the district court under U.S.S.G. § 2G2.2(b)(3)(F)[3] for distributing child pornography. We review de novo whether the district court correctly interpreted and applied the sentencing guidelines while district court factual findings are reviewed for clear error. United States v. Mashek, 406 F.3d 1012, 1016-1017 (8th Cir. 2005). Application note 1 following § 2G2.2 defines "distribute" as:

> "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant."

At sentencing, the district court relied upon this Court's decision in United States v. Griffin, 482 F.3d 1008 (8th Cir. 2007). In Griffin, the Court found that distribution occurred when a defendant "used a file-sharing network [Kazaa] to distribute and access child pornography." Id. at 1013. The defendant's "use of the peer-to-peer file-sharing network made the child pornography files in his shared folder available to be searched and downloaded by other Kazaa users." Id. at 1012; see also United States v. Sewell, 457 F.3d 841, 842 (8th Cir. 2006) (by using Kazaa to

_____

[3] Section 2G2.2(b)(3)(F) applies to "distribution other than distributions described in subdivisions (A) through (E)." The Government argues that subdivision (B) is relevant here which provides for a five-level enhancement for distribution child pornography to another person "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain. U.S.S.G. § 2G2.2(b)(3)(B).

download images of child pornography, the defendant "made these images available to be searched and downloaded by other Kazaa users by failing to disable the Kazaa feature that automatically places the files in a user's My Shared Folder.").

Estey's efforts to distinguish his case from Griffin are unconvincing. Estey notes that Griffin involved a five-level enhancement for distribution of child pornography for "the receipt of, expectation of receipt, or thing of value, but not for pecuniary gain" under U.S.S.G. 2G2.2(b)(3)(B). Estey, meanwhile, was charged with the catchall two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F). However, this distinction merely suggests that Estey's use of the filing sharing program could have amounted to distribution under either of these subparts of U.S.S.G. § 2G2.2(b)(3).

Second, Estey's argument that he inadvertently shared images with other network users is undermined by the record. Estey attempts to claim that, unlike Griffin, where the defendant admitted to knowingly using a file-sharing program, Estey took steps to disable the file-sharing feature of the program. He argues that inadvertent file-sharing is not analogous to "posting material" under Application note 1 to U.S.S.G. § 2G2.2(b)(3). However, like the defendants in both Griffin and Sewell, Estey knowingly placed an internet peer-to-peer file-sharing program on his computer, knew how the program operated, and shared images with other network users. Distribution under section U.S.S.G. § 2G2.2(b) occurs where a defendant "downloads and shares child pornography files via an internet peer-to-peer file-sharing network, as these networks exist-as the name "file-sharing" suggests-for users to share, swap, barter, or trade files between one another." Griffin, 482 F.3d at 1013. The record indicates Estey collected images from program searches and that other users were able to receive these images because Estey had child pornography in his file-sharing folder when the images were discovered by law enforcement authorities. Moreover, Estey admitted that he would place pictures in the file sharing folder because by sharing with others, it allowed him to download faster. Therefore, the district court properly applied the two-level enhancement for distribution under U.S.S.G. § 2G2.2(b)(3).

-11-

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____